FILED

MAR 16 2011

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | |
|---|---|
| In re | Case No. 10-61331-B-12 |
| Nicholas Anthony Soares, | DC No. PLF-2 |
| Debtor. | |

**MEMORANDUM DECISION REGARDING DEBTOR'S MOTION
TO VALUE COLLATERAL OF RABOBANK, N.A.**

This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

Peter L. Fear, Esq., appeared for debtor, Nicholas Anthony Soares.

David Y. Farmer, Esq., appeared for Rabobank, N.A., a National Banking Association.

Before the court is a motion by the debtor, Nicholas Anthony Soares (the "Debtor") to value the collateral of Rabobank, N.A., a National Banking Association ("Rabobank"). Rabobank holds a claim secured by a second priority trust deed against the Debtor's residence, which includes 20 acres of land, located in Kingsburg, California (the "Residence"). The Debtor needs to determine the value of the Residence, and thereby fix the amount of Rabobank's secured claim for the purpose of confirming a chapter 12 plan (the "Plan"). The Debtor contends that the fair market value of the Residence at the commencement of the case was $270,000. Rabobank argues that the fair market value of the Residence was $370,000. The Debtor and

Rabobank offered competing appraisals prepared by licensed appraisers. For the reasons set forth below, the value of the Residence will be fixed at $270,000.

This memorandum decision contains the court's findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rule of Bankruptcy Procedure 7052. The court has jurisdiction over this matter under 28 U.S.C. § 1334, 11 U.S.C. § 506[1] and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding as defined in 28 U.S.C. §§ 157(b)(2)(A) & (L).

**Background and Findings of Fact.**

The Debtor's petition was filed on September 30, 2010. With the petition he filed all required schedules which listed both the Residence and Rabobank's secured claim. The Residence is encumbered by a first deed of trust securing a claim held by Chase Home Finance in the amount of $184,843.[2] Rabobank filed a proof of claim in the amount of $173,186.67. Its claim is secured by a second deed of trust. The Debtor has the option in chapter 12 to surrender the Residence; however, his Plan is structured to pay in full the amount of Rabobank's secured claim. The Debtor contends that the Residence had a fair market value of $270,000 at the commencement of the case. Based thereon, the Debtor contends that Rabobank's claim is secured in the amount of $85,157 ($270,000 - $184,843), and that the remainder is unsecured.

In support of this value, the Debtor offered an appraisal prepared by Cynthia K. Borror ("Ms. Borror"), a licensed real estate appraiser with experience selling and appraising residential properties and farm properties. Conversely, Rabobank contends

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001-9036, as enacted and promulgated *after* October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

[2] The parties agreed at trial that Chase Home Finance's proof of claim will determine the amount of secured debt senior in priority to Rabobank's lien.

that the Residence had a fair market value of $370,000. Rabobank offered the appraisal and testimony of Kelly P. Stevens ("Mr. Stevens"), another licensed and experienced real estate appraiser who regularly appraises properties for Rabobank.

The Debtor testified as to the condition of his Residence, a 64-year-old ranch house which the Debtor recently remodeled, and 18 acres of land planted in Thompson Seedless raisin grapes. The Debtor had made significant improvements to the bathroom and the kitchen, and to the roof; however, the septic system is not functioning properly and needs substantial repairs or replacement. For that reason, the washing machine drain has been rerouted to an alternative leach line and the septic tank must be pumped periodically. The Residence has no insulation, nor does it have central heating or air conditioning ("HVAC"). Because of its age, the Residence has only a 60 amp electrical service, which is insufficient for HVAC. Before an HVAC system could be installed, the electrical service would have to be upgraded to at least the 100 amp service which has been standard for many years. It appears that bringing the insulation up to current standards would also be a prerequisite to the installation of HVAC.

The Debtor has been employed as a crop consultant for 30 years. He manages his 18-acre vineyard and, in prior years, has also farmed leased property. The majority of the Debtor's grapevines are at least 70 years-old. Vines such as the Debtor's reach peak production prior to age 60. Thereafter, it is generally not economical to farm them and they need to be removed. Last year the Debtor's net income from the vineyard was just under $10,000.

Unlike newer vineyards, which use drip irrigation and a modern trellis system, the water system in the Debtor's vineyard is out of date. In addition, the Debtor's water well is failing. The Debtor has not been able to measure the water level and has no records of the well's depth. However, similar other wells in the area are 60 feet deep. Last summer during the final irrigation of the Debtor's vineyard he heard the "bowls" rattle, an indication that the well was running dry and that a new, deeper, well

might be required in the near future. The Debtor testified as to the expenses of the needed repairs and replacement. Although the Debtor pays for irrigation rights to surface water, that supply pipeline has been blocked and is nonfunctional.

Rabobank's expert, Mr. Stevens, testified as to his experience and explained the facts and methods he used in arriving at his opinion of the Debtor's property. Mr. Stevens used both a "sales comparison" approach and a "cost" approach to value the Residence. Mr. Stevens essentially valued the Residence as 20 acres of prime agricultural land (worth $10,000 per acre) with a structure valued at $170,000. However, he was unable to answer the court's questions about the relevance of the "cost" approach for a structure of the same age and condition as the Residence.

The Debtor's expert, Ms. Borror, also testified as to her experience and explained the facts and methods she used to arrive at her opinion of the Debtor's property, based on a "sales comparison" approach. She appraised the Residence as a single family, rural residential property. She testified that properties such as the Residence are not generally purchased as income-producing agricultural property, they are generally purchased for residential purposes.

**Issues Presented.**

The court is asked here to determine, from two competing appraisals, the fair market value ("FMV") of the Residence. The FMV will determine how much of Rabobank's claim is secured and how much is unsecured for the purposes of the Plan. The sole issue presented to the court is one of mixed law and fact and may be stated simply as, which of the expert's appraisals described above should be used to determine the FMV of the Residence. In relative terms, the parties are substantially far apart in their respective "values." The court must choose, based on the evidence presented, between one of the suggested results. There is no evidence or "sliding scale" formula upon which the court can arrive at a "middle ground" value.

**Burden of Proof.**

Generally, a secured creditor's proof of claim constitutes prima facie evidence

of the validity and amount of its claim. *Brown v. IRS (In re Brown)*, 82 F.3d 801, 805 (8th Cir. 1996); Fed.R.Bankr.P. 3001(f). This presumption places the burden of producing evidence to rebut the presumption on the debtor. *Id.* Indeed, absent a timely motion by the debtor to value the creditor's collateral, the chapter 12 trustee generally accepts the amount stated as "secured" in the proof of claim for purposes of paying the claim in a plan. Once a motion to value is filed by the debtor, the creditor has the ultimate burden of persuasion to prove by a preponderance of the evidence the value of the collateral which secures its claim. *Id.* Here, any presumptive weight which may flow from Rabobank's proof of claim is extinguished by the proof of claim itself, which states that the value of its collateral is "unknown."

**Analysis and Conclusions of Law.**

The Debtor seeks to value Rabobank's interest in the Residence based on § 506(a)(1), which states:

> An allowed claim of a creditor secured by a lien on property in which the estate has an interest . . . is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property . . . and is an unsecured claim to the extent that the value of such creditor's interest . . . is less than the amount of such allowed claim. *Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.* (emphasis added).

When a debtor intends to stay in the home, the proper valuation of the property under § 506(a) is the fair market value. *Taffi v. United States of America (In re Taffi)*, 96 F.3d, 1190, 1192 (9th Cir. 1996). The FMV is not the "replacement" value because the property is not being replaced. The FMV is "the price which a willing seller under no compulsion to sell and a willing buyer under no compulsion to buy would agree upon after the property has been exposed to the market for a reasonable time." *Id.*

Both expert witnesses used the "direct sales" approach as the starting point to value the Residence, *i.e.*, they used actual sales of comparable properties, or "comps" as the starting point for determining the value of the Residence. A property located at

14939 South Del Rey Avenue, Del Rey, California (the "Del Rey Property") was used by both experts as an appropriate comparable sale. After making their adjustments, the two experts' opinions of the value of the Del Rey Property varied by approximately $100,000, which essentially accounts for the difference in their respective appraisals of the Residence. While Ms. Borror was able to satisfactorily explain the facts and assumptions which formed the basis for her opinion and the adjustments she made with regard to the Del Rey Property, Mr. Stevens was not able to explain in a convincing manner why his valuation differed so greatly from Ms. Borror's for the same property.

Of special note is the fact that the valuation of the Residence under Mr. Stevens' "sales comparison" approach and under his "cost" approach were virtually identical. Again, Mr. Stevens could not explain satisfactorily why the two values were the same. On the other hand, Ms. Borror's explanation of why she evaluated the Residence as rural residential property and her description of how she arrived at her opinion as to its value, was reasonable and made sense.

Mr. Stevens' description of his appraisal method in which he assigned a value of $200,000 for the land itself, based on agricultural use, and used an on-line estimating service for the replacement cost for the dwelling, was not realistic. While Mr. Stevens testified that he made the appropriate deductions from the replacement cost based on the specific characteristics of the Residence, the supporting information was not introduced into evidence and Mr. Stevens was unable to answer the court when questioned as to the factors and assumptions that he relied upon. In a nutshell, Ms. Borror's opinion as to the FMV of the Residence was the most believable.

**Conclusion.**

The opinions of the two expert witnesses, as to the FMV of the Residence, differed by $100,000. The court is persuaded that the Debtor's valuation of the Residence is more likely to be accurate than that of Rabobank. Based thereon, the court finds and concludes that the value of the Debtor's Residence, for the purpose of fixing the amount of Rabobank's secured claim, is $270,000. After deducting the

senior secured debt against the Residence, Rabobank's claim is secured in the amount of $85,157. The balance of Rabobank's claim may be provided for in the Plan as a general unsecured claim.

Dated: March 16, 2011

W. Richard Lee
United States Bankruptcy Judge